Filed 6/2/25  P. v. Ruiz CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B336269 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. BA439101 |
| v. | |
| JOSE LUIS RUIZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ray G. Jurado, Judge.  Affirmed with corrections.

Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

————————

The trial court struck a one-year prior prison term from Jose Luis Ruiz's sentence but denied further relief. We affirm his reduced, 17-year sentence. Code citations are to the Penal Code.

I

We state the facts from the probation report, as does Ruiz.

One morning in August 2015, police went to the home Ruiz shared with his girlfriend of two years and her two sons. Ruiz was at the scene with blood on his face.

Around 10 p.m. the evening before, Ruiz had returned home agitated and paranoid. His girlfriend told him to leave so she could go back to sleep. Ruiz grabbed her from behind and threatened to kill her if she moved. He had a kitchen knife in his hand. Ruiz held her in the bedroom for several hours and threatened to kill her two sons if she yelled or said anything. She begged him to let her go. Ruiz grew angrier and punched her in the eye and the mouth, cutting her lip and making her bleed and swell. He broke furniture in the house. Then he went to the boys' room and kicked the door open. He ordered the boys to listen and to hand over their phones or else he would kill their mother. They were scared and complied. Ruiz told the older boy to stand at the window and watch for people who were pursuing him. The boys managed to grab pieces of broken furniture, and they hit Ruiz. One of them called police.

A December 2015 information charged Ruiz with seven counts: one count of injuring a cohabitant (§ 273.5, subds. (a–b)); three counts of criminal threats (§ 422, subd. (a)); and three counts of false imprisonment by violence (§ 236). The information warned Ruiz had two prior serious felony convictions and was subject to sentencing under the Three Strikes law.

2

In October 2018, Ruiz pleaded no contest to the injuring a cohabitant count. Ruiz further admitted personally inflicting great bodily injury under circumstances of domestic violence (§ 12022.7, subd. (e)); serving a prior prison term (§ 667.5, subd. (b)); and having at least one prior "strike" (§ 1170.12; § 667, subds. (b)-(i)) and one prior serious felony conviction (§ 667, subd. (a)(1)).

In January 2019, the court sentenced Ruiz to an 18-year prison term pursuant to his plea bargain. This was the upper term of four years for injuring a cohabitant, doubled due to the strike, plus four years for the great bodily injury allegation, five years for the serious felony prior, and one year for one prison prior.

In March 2023, the court struck the prison prior due to changes in the law invalidating these enhancements. (See *People v. Monroe* (2022) 85 Cal.App.5th 393, 397, 399 [discussing the changes and the adoption of section 1172.75].) A new abstract of judgment was filed, which showed a 17-year sentence but did not update the custody credits.

Soon after, Ruiz moved to recall his sentence and to set a full resentencing hearing under section 1172.75. The prosecution opposed, and Ruiz filed a reply. The trial court permitted a full resentencing proceeding.

Ahead of this proceeding, Ruiz filed a Petition for Resentencing asking the court to strike his strike and his enhancements and to resentence him to the middle or low term. Ruiz pointed to various laws enacted after his original sentencing that permitted this relief, including Senate Bill No. 81 (2021-2022 Reg. Sess.), which amended section 1385 to require courts to give great weight to mitigating circumstances when considering dismissing enhancements that are unnecessary for public safety. (See *People v. Walker* (2024) 16 Cal.5th 1024, 1030; § 1385, subd.

(c).) Ruiz also raised Senate Bill No. 567 (2021–2022 Reg. Sess.), which amended section 1170 to confine a court's authority to impose the upper term in a sentencing triad. (See *People v. Lynch* (2024) 16 Cal.5th 730, 773 (*Lynch*).) Ruiz's motion discussed mitigating circumstances, including "Evidence of Changed Circumstances" in prison, and attached documents showing his progress and good behavior there.

At the December 2023 hearing, the trial court said it had considered both sides' papers and attachments. The court admitted a certified copy of Ruiz's rap sheet into evidence and read his lengthy adult criminal history into the record. The court noted it already had struck the prison prior. It methodically considered each ground for striking part of Ruiz's sentence and declined to exercise its discretion to reduce his sentence further, leaving Ruiz with a 17-year sentence.

## II

In his first appellate brief, Ruiz argued the court abused its discretion in refusing to strike his enhancements, and his custody credits are inaccurate. Ruiz later filed a supplemental opening brief challenging the reimposition of the upper term. Two of these attacks fail. We direct the trial court to correct Ruiz's credits.

## A

On his first issue, Ruiz relies upon *People v. Gonzalez* (2024) 103 Cal.App.5th 215 (*Gonzalez*) to argue the trial court applied an incorrect standard in declining to dismiss his two remaining enhancements, which added nine years to his sentence. Ruiz maintains the court failed to consider his future dangerousness upon striking one or both enhancements and instead looked only to his past and present dangerousness. He concedes the court did

4

not need to state its reasons for declining to exercise its authority under section 1385.

Ruiz's argument mistakes the record and his appellate burden. He must demonstrate error. (See *People v. Giordano* (2007) 42 Cal.4th 644, 666.) We presume the court's order is correct and further presume the court knew and followed the law, absent a record showing otherwise. (*Ibid.*; *People v. Ramirez* (2021) 10 Cal.5th 983, 1042; see also *People v. Campbell* (2023) 98 Cal.App.5th 350, 383 [appellate courts presume the trial court considered all relevant factors in the absence of an affirmative record to the contrary].)

Ruiz has not demonstrated the trial court applied the wrong standard or otherwise abused its discretion. (See *Gonzalez*, *supra*, 103 Cal.App.5th at p. 225 [abuse of discretion standard applies].)

The court ruled that "imposing a lesser sentence, a further lesser sentence, that is, would endanger public safety" based on the extreme violence Ruiz displayed in this case and the increasing seriousness and number of his prior convictions, as shown by his certified rap sheet. The court explained these factors outweighed the "post conviction facts" (his progress in prison and reduction in his inmate classification score) and the mitigating factors discussed at the hearing and set out in Ruiz's briefing. The court said it was affording great weight to the section 1385 mitigating circumstances but found "dismissal of any further enhancements would endanger public safety." It went on to consider separately each component of Ruiz's sentence.

This ruling was forward-looking. As Ruiz concedes, it was appropriate for the court to consider his current crime and his past ones, among other factors, in deciding whether shortening his sentence would endanger the public. Unlike *Gonzalez*, nothing

shows the court assessed only Ruiz's current dangerousness. (See *Gonzalez*, *supra*, 103 Cal.App.5th at pp. 224, 228, 230.)

The trial court properly exercised its discretion under section 1385.

B

Pointing to a recent case with the same name, *People v. Gonzalez* (2024) 107 Cal.App.5th 312, Ruiz's supplemental brief argues the court violated amended section 1170 and his jury trial rights by reimposing an upper term sentence. Relevant here, subdivision (b) of this statute generally requires a jury to find aggravating circumstances used to impose an upper term, where the circumstances are not based on prior convictions or the defendant's stipulation. (See § 1170, subds. (b)(1)–(3).)

The prosecution responds that this provision does not apply to stipulated sentences like Ruiz's, and the resentencing statute here (section 1172.75) permits courts to reimpose the upper term without additional fact finding.

This issue decides whether Ruiz's total sentence is 15 or 17 years.

We first detail the relevant proceedings and then explain why any error in reimposing the upper term was harmless beyond a reasonable doubt. (See *Lynch*, *supra*, 16 Cal.5th at pp. 761, 768, 775.)

1

At Ruiz's original sentencing proceeding in 2019, the trial court said it was sentencing Ruiz to the high term "pursuant to your plea bargain." Thus, contrary to Ruiz's arguments, the record shows the sentence—including the upper term—was part of the plea deal.

6

At the resentencing hearing in December 2023, the court focused on Ruiz's certified rap sheet. It asked defense counsel why Ruiz's criminal history should not be an aggravating factor. Counsel acknowledged "a certified rap sheet can be used" without a jury finding or her client's admission but argued Ruiz's criminal record did not "by itself justify high term." The court observed one aggravating factor can justify the high term and one such factor could be prior convictions that are numerous or increasing in seriousness.

The court then admitted a certified copy of Ruiz's rap sheet and read each of his adult convictions into the record. Excluding the conviction on appeal, these convictions are: carrying a concealed weapon, with a prior conviction (December 2002); carjacking (July 2003); brandishing a replica firearm (July 2004); robbery (April 2008); vandalism (April 2015); and battery of a non-inmate while in custody (January 2019).

The court invited Ruiz's counsel to discuss mitigating factors and asked the prosecution to identify facts relating to the danger to public safety. The prosecution discussed facts of the underlying case, and the court intervened, saying, "but you don't want me to fall into the trap of finding an aggravating factor that hasn't been found true by a jury or proven by acceptable evidence, like, a certified copy of a rap sheet; right?"

The court ultimately considered each component of Ruiz's sentence and declined to "further reduce the defendant's sentence beyond striking the one-year enhancement[.]" When considering the upper term, the court said: "With regard to Penal Code sections 1170 and 1170.1, I also decline to reduce the Defendant's sentence from high term to the mid term based on the finding that the aggravating circumstances outweigh the mitigating

7

circumstances in that the Defendant's prior convictions are numerous and are increasing in seriousness as shown in the certified copy of the Defendant's rap sheet."

2

Before addressing harmlessness, we make three observations. First, the words of the statute through which Ruiz seeks relief—section 1172.75—seem to permit the court to retain Ruiz's upper term. (See § 1172.75, subd. (d)(4), italics added ["*Unless the court originally imposed the upper term*, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial"].) Second, we question whether Ruiz may use this section or amended section 1170 to disrupt a term to which he agreed in exchange for dismissing six counts and other allegations. Third, the two aggravating factors on which the court relied to maintain the upper term appear to fit squarely within subdivision (b)(3) of section 1170, which provides that "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (See also *Lynch*, *supra*, 16 Cal.5th at p. 742 ["Allegations of prior convictions may be tried by the court alone and proven by certified records of conviction"].)

We sidestep these unsettled issues that divide our courts by assuming they favor Ruiz, and we conclude any error in retaining the upper term here was harmless beyond a reasonable doubt.

Under *Lynch*, we ask whether the omission of a jury trial was harmless beyond a reasonable doubt as to every aggravating

8

fact the trial court used to justify an upper term sentence. (*Lynch*, *supra*, 16 Cal.5th at p. 775.) The answer here is yes.

Ruiz's certified record of conviction demonstrates his prior convictions are numerous, even excluding the prior serious felony enhancement. (See § 1170, subd. (b)(3) & (5).) This record, in tandem with Ruiz's admissions from the time of his plea, also shows beyond a reasonable doubt that his convictions were increasingly serious. For good reason, Ruiz never argued otherwise when the trial court raised this aggravating circumstance at the resentencing hearing. Ruiz's prior convictions were for crimes targeting property or for possessing or showing a firearm. His current offense of injuring his girlfriend escalated the level of violence. Ruiz admitted he inflicted great bodily injury on his partner and used a knife. Moreover, *while incarcerated for this violent crime*, he battered someone else.

Beyond a reasonable doubt, a jury would have found both aggravating circumstances true.

Contrary to Ruiz's arguments, it is clear the court did not ground the upper term in any aggravating factor beyond the multitude and increasing seriousness of his convictions.

Finally, to the extent Ruiz argues the court misunderstood its authority under section 1170, subdivision (b) because it did not have the authority to decide whether Ruiz's convictions were increasingly serious, the record makes clear the court would have reached the same conclusion on the upper term based on a sole factor (Ruiz's numerous prior convictions), were we to remand the matter for resentencing again. (See *Lynch*, *supra*, 16 Cal.5th at pp. 771, 773–774.) This result is permissible. (See *id.* at pp. 764; see also *id.* at pp. 777–778 [on remand, the court "may rely on any properly proven aggravating facts, including prior convictions . . . .

9

The court retains its discretion to impose an upper term sentence if it concludes that one or more properly proved circumstances justify such a sentence"].)

### C

Ruiz argues the trial court erred in failing to recalculate custody credits to account for the time he spent in prison between his two sentencings. The prosecution concedes the error and notes this additional period totals 1,801 days. The abstract of judgment should reflect this omitted custody time.

### DISPOSITION

We direct the trial court to prepare an amended abstract of judgment reflecting a resentencing date of December 20, 2023 and an additional 1,801 days spent in custody for a total of 3,234 days. The court must forward this amended document to the Department of Corrections and Rehabilitation. We otherwise affirm the judgment.


WILEY, J.


We concur:



STRATTON, P. J.



VIRAMONTES, J.



10